UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DEMEKO BRAZILLE HOLLAND,<br><br>                  Petitioner,<br>    v.<br><br>JASON BENNETT,<br><br>                  Respondent. | CASE NO. 2:24-cv-00370-LK-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: April 26, 2024 |

The District Court has referred this federal habeas action to United States Magistrate Judge David W. Christel. Petitioner Demeko B. Holland, proceeding *pro se*, has filed a motion to proceed *in forma pauperis* ("IFP") (Dkt. 1) and a proposed § 2254 habeas petition (Dkt. 1-1). Upon review of his proposed Petition, it plainly appears Petitioner is not entitled to habeas relief. Accordingly, the undersigned declines to order service upon Respondent, recommends the proposed Petition (Dkt. 1-1) be dismissed with prejudice under Rule 4 of the Rules Governing § 2254 cases ("Habeas Rules"), and further recommends the IFP Motion (Dkt. 1) be denied as moot.

REPORT AND RECOMMENDATION - 1

# I. BACKGROUND

Petitioner is currently in custody at Stafford Creek Corrections Center, where he is serving a sentence arising out of his jury conviction for second degree murder and first degree unlawful possession of a firearm. Dkt. 1-1, at 1; *State of Washington v. Holland.,* Superior Court of King County Cause No: 06-1-04598-6 (judgment entered August 6, 2008); *State v. Holland*, 155 Wash. App. 1035, 2010 WL 1647454 (2010), *as corrected* (May 6, 2010) (denial of direct appeal); *State v. Holland*, 169 Wash. 2d 1027, 241 P.3d 413 (2010) (denial of petition for discretionary review of direct appeal).[1]

## A. Prior Petition for Federal Habeas Relief

In 2014, Petitioner filed a petition before this Court seeking federal habeas relief on the same state-court conviction ("2014 Petition"). *See Holland v. Glebe*, No. 2:14-cv-00070-JCC-BAT, No. 2:14-cv-00070-JCC-BAT, 2014 WL 5306674 (W.D. Wash. Oct. 15, 2014). The factual and procedural background for Petitioner's conviction and his 2014 Petition were outlined in this Court's August 26, 2014 Report and Recommendation:

**Statement of Facts**

The Washington Court of Appeals summarized the facts underlying Mr. Holland's convictions as follows:

> On August 18, 2003, at approximately 11:20 a.m., 14-year-old David Chhin was shot to death on a street in West Seattle where he had been riding his bicycle. Witnesses reported to police that the shooter was running through the residential area west of the shooting. At 11:46 a.m., Seattle Police Officer Richard Heideman stopped Demeko Holland about 10 blocks northwest of the shooting. Holland said, "Why did you stop me? I'm just out jogging." Holland then told Officer Heideman that he had been doing lawn work in the area and was just taking a break and jogging. When additional officers arrived, they arrested Holland. Officer Caryn Lee read Miranda [footnote omitted] warnings to Holland from a card. In response to

---

[1] The Court may take judicial notice of court filings and other matters of public record related to Petitioner's conviction. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (citing *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir. 1998)).

the officers' questions, Holland gave a false name and date of birth and offered differing explanations for his actions.

At the police station, Holland made additional statements to two detectives. Holland was disheveled, moody, and sometimes crying. Holland told the detectives that he had smoked "sherm" earlier and had had very little sleep. (Officer Rob Blanco identified "sherm" as "marijuana dipped in a substance, dried and smoked.") After giving various accounts of his whereabouts, Holland eventually stated that he had no memory of the shooting because of the sherm but that "it could have happened" if the police thought he was involved. According to Detective Donna O'Neal, when she suggested that he write a letter to the victim's family to express his remorse, Holland said that "was a good idea, he liked the idea, but he would do it later" because he had given statements on prior occasions and had "been burned by it."

The State charged Holland with murder in the first degree and unlawful possession of a firearm in the first degree. At a CrR 3.5 hearing, Officer Lee testified that she read the Miranda warnings to Holland, that Holland affirmatively indicated that he understood his rights, and that she did not ask Holland the final question printed on the card: "Having these rights in mind, do you wish to talk to us now?" During cross-examination, Officer Lee admitted that Holland's acknowledgment could have been "a simple nod up and down." The trial court ruled that all Holland's statements to police were admissible. The trial court found that although Holland had not been explicitly asked to waive his Miranda rights, he was fully aware of his rights and continued to "speak freely with officers and detectives in the absence of any threats, promises or coercion."

At trial, the State presented testimony from several witnesses who believed they had seen the shooter shortly after the crime, police testimony about Holland's arrest and statements, and physical evidence from the scene and the surrounding neighborhood. In closing argument, defense counsel argued that Holland had a drug addiction and had no memory of the time of the shooting because of his drug use; that the witnesses changed their testimony to make Holland appear guilty; that the police pressured Holland and twisted his statements and did not fully investigate the case; and that the State's evidence did not prove Holland's guilt. In rebuttal, the prosecutor argued:

> [Defense counsel] talked to you about the ugly consequences of addiction and how the defendant can't get up here and tell you what he doesn't remember because of it. Really? Is there any testimony about the defendant's addiction to sherm or any other drug? Is there any testimony at all about the effects of sherm that he smoked that night? Is there any testimony on how it might or might not affect your memory, no.

REPORT AND RECOMMENDATION - 3

> Holland did not object. The prosecutor later responded to defense counsel's suggestion that Holland could have learned details of the shooting by overhearing a cellular phone conversation between police officers or other State witnesses, by arguing, "By golly, those witnesses were up there. Why didn't she ask them." Defense counsel objected to "burden shifting," but the trial court did not make a ruling, and the prosecutor continued his argument.
>
> The jury found Holland guilty of the lesser-included offense of murder in the second degree and of unlawful possession of a firearm in the first degree. The trial court imposed a standard range sentence. . . .
>
> **State Procedural History**
>
> Mr. Holland appealed from his judgment and sentence to the Washington Court of Appeals. 2023 WL 3301039 Appeals affirmed the judgment and sentence. Mr. Holland sought review by the Washington Supreme Court. The Washington Supreme Court denied review on October 5, 2010. The mandate issued on November 3, 2010.
>
> Mr. Holland then filed a personal restraint petition in the Washington Court of Appeals. The Washington Court of Appeals denied the petition. Mr. Holland sought review by the Washington Supreme Court. The Washington Supreme Court denied review on September 27, 2013.

*Holland v. Glebe*, No. 2:14-cv-00070-JCC-BAT, Dkt. 18 at 2–4 (W.D. Wash. Oct. 15, 2014), *report and recommendation adopted*, No. 2:14-cv-00070-JCC-BAT, 2014 WL 5306674, at *6–8 (W.D. Wash. Oct. 15, 2014) (internal citations omitted) (alterations in original).

The 2014 Petition raised seven claims for habeas relief, including whether Petitioner's post-arrest statements to law enforcement should have been excluded at trial in accord with *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). Each claim was addressed on the merits and found to be unavailing. *Holland*, 2014 WL 5306674 at *3–6. In particular, the Court found the Washington Court of Appeals—which authorized the last reasoned decision on the matter—was not unreasonable in determining Petitioner waived his *Miranda* rights. *Id.* at *3–5. As a result, the Court dismissed the 2014 Petition with prejudice. *Id.* at *6. However, because the Court

found reasonable jurists could differ on the *Miranda* claim, it issued Petitioner a certificate of appealability on that claim only. *Id.* at *1.

Petitioner appealed this Court's decision, and, on February 18, 2026, the Ninth Circuit affirmed. *Holland v. Glebe*, 637 F. App'x 364, 365 (9th Cir. 2016).

**B.     Motion for Postconviction DNA Testing**

In 2022, Petitioner obtained counsel and filed a motion for post-conviction DNA testing before the King County Superior Court. *See State v. Holland*, 26 Wash. App. 2d 1035, 2023 WL 3301039 (2023). The motion—which sought leave to perform DNA testing on the firearm presented at Petitioner's trial—was denied, and Petitioner appealed. *See Holland*, 2023 WL 3301039 at *1.

On May 8, 2023, the Washington Court of Appeals affirmed the Superior Court's decision to deny postconviction DNA testing. *Id.* The Appeals Court explained a person requesting postconviction DNA testing under Washington state law must prove, among other things, "[a] likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." *Id. at *2* (citing Wash. Rev. Code 10.73.170(3)). The Appeals Court agreed with the Superior Court's decision Petitioner had not satisfied this requirement, explaining:

> Even if there were a possibility the firearm would yield DNA and produce favorable results, it would not establish [Petitioner's] innocence.…[T]he gun could have been handled by anyone when it was left outside in a bush for 20 months.
>
> Indeed, the gun has likely been handled by several individuals before and after its discovery in 2005. [Petitioner] told police it was possible he got the gun from his friend; it was in the bushes for 20 months; it was handled by DNA scientists and taken apart and reassembled at a ballistics lab; it was handled and transported by the police; and it was also admitted at trial. And even if the gun was not compromised by the DNA of others, the absence of [Petitioner's] DNA and the presence of someone else's does not outweigh the substantial evidence incriminating [Petitioner]. Because [Petitioner] failed to show the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis, we conclude that he fails to satisfy the substantive requirement.

REPORT AND RECOMMENDATION - 5

*Id.* at *4–5. Petitioner, still represented by counsel, did not seek discretionary review by the Washington Supreme Court before the deadline to do so elapsed. Dkt. 1-1 at 5.

**C.   Instant Action**

Thus, on March 3, 2024, Petitioner filed his proposed Petition, arguing he received ineffective assistance of counsel with regard to his state-court motion for postconviction DNA testing. Dkt. 1-1 at 5. The Court now screens the proposed Petition (Dkt. 1-1) to determine whether ordering service upon Respondent is appropriate.

## II.   LEGAL STANDARD

Under Rule 4 of the Habeas Rules, the Court is required to perform a preliminary review of a habeas petition. The Rule specifically directs the Court to dismiss a habeas petition before the respondent is ordered to file a response, if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

Under Rule 2(a) of the Habeas Rules, "the petition must name as respondent the state officer who has custody." Further, the petition must:

> (1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by the petitioner or person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

*Id.* at Rule 2(c). The petition must "substantially follow" a form prescribed by the local district court or the form attached to the Habeas Rules. *Id.* at Rule 2(d).

## III.   DISCUSSION

The sole ground for habeas relief identified in the proposed Petition is Petitioner's allegation his postconviction counsel was ineffective with regard to his motion for postconviction DNA testing. Dkt. 1-1 at 5. However, Petitioner's motion for postconviction DNA testing was a collateral proceeding for which there is no constitutional right to effective

assistance of counsel. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) (the right to appointed counsel and effective assistance from such counsel extends to the first appeal as of right and no further); *see also Jeffers v. Lewis,* 68 F.3d 299, 300 (9th Cir.) (en banc), *cert. denied,* 515 U.S. 1187 (1995) (there is no constitutional right to counsel in a collateral postconviction proceeding). As a result, Petitioner has not raised any cognizable claims for habeas relief, and his proposed Petition should be dismissed.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not debate the outcome recommended here, so Petitioner is not entitled to a certificate of appealability with respect to his proposed Petition.

## V. CONCLUSION

For the reasons outlined above, it plainly appears from the proposed Petition Petitioner is not entitled to habeas relief. Thus, in accordance with Rule 4 of the Habeas Rules, the Court declines to order service upon Respondent and, instead, recommends the proposed Petition (Dkt.

1-1) be dismissed with prejudice, a certificate of appealability not be issued, and the IFP motion (Dkt. 1) be denied as moot.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the District Judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on April 26, 2024, as noted in the caption.

Dated this 8th day of April, 2024.

David W. Christel
United States Magistrate Judge